## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

SERGEANT JAMES CHRISTOPHER
BURGESS,

               Plaintiff,

v.

TOWN OF DALLAS, NORTH
CAROLINA, ROBERT WALLS, in his
official capacity as Chief of Police of the
DALLAS Police Department and in his
individual capacity;

               Defendants.

_____/

**COMPLAINT**

**Jury Trial Demanded**

The Plaintiff, Sergeant ("Sgt.") James Christopher Burgess alleges and says,

## I.   INTRODUCTION & JURISDICTION

1.      This is a civil action under Civil Rights Act of 1866, 42 U.S.C. 1981 ("Section 1981"), 42 U.S.C. Section 1983 and the 14th Amendment of the United States Constitution, and 28 U.S.C. Section 1343, charging defendant with denial of equal protection of the law, deprivation of liberty and property interests and discrimination against plaintiff in terms and conditions of employment based on race.

2.      Jurisdiction of the court is invoked pursuant to 28 U.S.C. §§2201 and 2202, this being an action for declaratory judgment declaring illegal the acts of Defendants complained of herein, violating rights secured to Plaintiff by Section 1983.

3.      Venue of this Court is pursuant to 28 U.S.C. Section 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

## II. <u>PARTIES</u>

4.      Plaintiff, Sergeant James Christopher Burgess (also referred to herein as "Plaintiff") is an African American male United States citizen and resident of Gaston County, North Carolina.

5.      Defendant Town of Dallas Police Chief Robert Walen Walls ("Chief Walls") is a citizen and resident of Cherryville, located in Gaston County, North Carolina

6.      Defendant Town of Dallas Police Chief Robert Walen Walls ("Chief Walls") is the final decision-maker for personnel matters and the final policymaker for the Town of Dallas. He acted with final policymaking authority when he instituted a sergeant promotion board, captain promotion board, and when he selected Marcus Andrew Fleming, a white male, for the position of Captain.

7.      Defendant Town of Dallas (also referred to hereinafter as "the Town") is a municipal corporation located in Gaston County, North Carolina. Like many cities and towns in North Carolina, the Town of Dallas maintains a police department (the "DPD"). Police Officers, such as Plaintiff, are employed by the Town of Dallas.

8.      The Defendant, Town of Dallas ("Town"), was and is a municipal corporation located in Gaston County, North Carolina, duly chartered and existing pursuant to the provisions of N.C. Gen. Stat.§ 160A-1 and vested with corporate

powers and rights as specified in N.C. Gen. Stat.§ 160A-l l, including, but not limited to, the capacity to sue and be sued. At all times relevant to this action, Defendant Town acted through its managers and policy makers, including the Chief of Police Robert Walls; and the acts, edicts, and practices of said persons represent the official policies of Defendant Town.

9.      Defendant Town of Dallas (the "Town") is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It maintains and operates the Dallas Police Department ("DPD"). Employees of DPD are employees and agents of the Town, which bears legal responsibility under state law for negligent acts and omissions of DPD in the course of their employment. The Town is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.      Further, on information and belief, the Town of Dallas, at the time of the actions taken against Plaintiff, had waived governmental or sovereign immunity from the state law tort claims in this case pursuant to G.S. § 160A-485[1], either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the Town and its agents for any judgment against it or its agents named in this action.

---

[1] Specifically, the statute provides: "Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool . . . shall be deemed to be the purchase of insurance for purposes of this section. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability." 485(a).

11.     Upon information and belief, to the extent that any and/or all of the Defendants in this action claim they are a municipal and/or governmental and/or Town owned, operated, and/or funded entity or an employee and/or agent of any such entity such Defendants do not have governmental immunity and/or sovereign immunity for any of the acts or omissions described herein. In the alternative, should any and/or all of the Defendants in this action have governmental immunity and/or sovereign immunity, upon information and belief, any and/or all such Defendants have waived any and all such governmental immunity/or sovereign immunity to which they may have been otherwise entitled for themselves, their agents, employees and all officials acting in their official (and, if applicable, individual) capacities for civil liability and tort by the act of purchasing (or otherwise procuring, obtaining and/or having in place) liability insurance (or the functional and substantive equivalent thereof, i.e., participation in a local governmental risk pool, etc.) prior to, concurrent with, and/or subsequent to and/or applicable to the acts and omissions alleged herein.

12.     At all times relevant to the allegations alleged in this Complaint, Defendant Walls was employed by the Defendant Town and/or Town of Dallas as a law enforcement officer and Chief of Police, and was acting at all relevant times as an agent of Defendant Town within the course and scope of his duties as a sworn officer of the Dallas Police Department and under the color of laws, statutes, regulations, customs, practices and usage of the Town of Dallas, County of Mecklenburg and the State of North Carolina. He is sued in his official capacity for compensatory damages

under both State and Federal law.

13.     Defendant Town and Defendant Walls and DPD had the right and/or power to direct and control the manner in which its/their employees and/or agents executed their official duties.

14.     The grossly negligent acts, omissions and liability of all Defendants includes their agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, actual authority, apparent authority, actual agency, ostensible agency and/or *respondeat superior* and the acts and/or omissions of the above- named Defendants were a direct and proximate cause of the injuries, damages and losses sustained by the Plaintiff.

15.     Upon information and belief, Defendant Town of Dallas has employment practices liability coverage.

16.     Upon information and belief, liability insurance policy issued by the Interlocal Risk Financing Fund of North Carolina provides coverage for some  or all of Plaintiff's claims herein.

17.     Upon information and belief,  the Town maintained *some* amount of liability insurance coverage.

18.     Jurisdiction is founded upon North Carolina common law against the Defendant Town, and Defendant Walls in his official capacity as the Chief of DPD. Plaintiff further invokes this Court's concurrent jurisdiction to hear claims arising under the Fourth and Fourteenth Amendments of the United States Constitution and

brought pursuant to 42 U.S.C. §§ 1983 and 1988.

## III. <u>FACTS</u>

19.     Plaintiff has been employed by the Town of Dallas and Dallas Police Department since March 14, 2016.

20.     Prior to working for the Dallas Police Department, Plaintiff had eleven years of law enforcement experience.

21.     Plaintiff served four years of active duty with the Marine Corps and 16 years with the North Carolina National Guard, retiring as a sergeant in 2020.

22.     Plaintiff has an associate and bachelor's degree in criminal justice.

23.     As of the date of this filing, Plaintiff is currently working on his master's degree.

24.     Plaintiff has been awarded his advanced law enforcement certificate from the State of North Carolina, which is the highest certification an officer can receive.

25.     Plaintiff was promoted from Patrol Officer to Sergeant on October 15, 2017. Officer Burgess was promoted to Detective Sergeant and given authority over other Sergeants on April 16, 2018, after the white Patrol Sergeants got demoted and placed on the same rotation.

26.     After being promoted to sergeant, Plaintiff' annual salary increased to $40,000.00.  Shortly thereafter, Plaintiff discovered the Town paid him $7,000.00 less

than two white police sergeants.

27.     Plaintiff' position rated a higher pay as a Detective Sergeant as opposed to a Patrol Sergeant, which was the position held by the two white sergeants. Plaintiff complained to then Chief Scott and Town Manager Maria Stroupe.

28.     Shortly thereafter, Maria Stroupe adjusted Plaintiff' pay, but the Town refused to pay Plaintiff his back pay for the six months he was underpaid.

*Plaintiff's Non-Promotion to Captain or Lieutenant within the Town of Dallas Police Department*

29.     Upon information and belief, in or about 2020, Chief Walls was appointed chief of police without any promotional process. During the year 2020, Chief Walls let both the captain and lieutenant positions sit vacant for over a year.

30.     Sgt. Burgess inquired about the captain and lieutenant vacancies since he was the senior sergeant and had more experience than any other officer.

31.     Chief Walls informed Plaintiff that he was going to conduct a promotional board, which had never been done before. The Town held a promotional board for sergeants first and promoted Officers Fleming and Beer to the rank of sergeant.

32.     Eleven months after the promotional board for sergeants, Defendant Chief Walls would then promote Sgt. Fleming to Captain.

33.     In or around November 2020, Plaintiff informed the Town and Chief

Walls of his interest in applying for the vacant Captain position. The interview process involved three phases: (1) an essay on why the candidate should be promoted to Captain; (2) responses to eight scenarios; and (3) an interview with a promotion board on or about February 11, 2021.

34.     Before a decision was made with respect to the Captain position, on or about January 31, 2021, Plaintiff notified Defendants of his concerns about being treated differently based on race. Specifically, Plaintiff complained that he had not previously been promoted in a similar fashion as his white colleagues and that he did not believe the Town considered him for any active vacancies because of his race. Defendants never made Plaintiff aware of the outcome of the Town's investigation of his complaint.

35.     On or about February 24, 2021, Chief Walls notified Plaintiff that he was not selected for the position of Captain. The Town did not provide a reason for Plaintiff's non-selection.

36.     Defendant Chief Walls selected a lesser qualified white sergeant, Marcus Fleming, for the Captain role. The white male selected for the captain position had less job-related education and years of experience than Plaintiff at the time of the application.

37.     Neither the Town  nor Chief Walls provided Plaintiff with guidance on areas that he could improve his chances for a promotion.

38.     Prior to becoming chief of police, Defendant Chief Walls had been

promoted to Lieutenant, and then to Captain in a matter of six months without ever having to go before a promotion board.

39.     The Town chose to fill the Lieutenant position with Defendant Chief Walls, a white officer, when he was a Sergeant but chose not to fill the vacant role with Plaintiff, a black officer and the only candidate for lieutenant. Defendant Chief Walls informed Plaintiff that the Town would not fill the vacant lieutenant position.

40.     After Chief Walls' promotion, the Captain position was left vacant. Plaintiff and former-Sergeant Fleming, a white male, applied for the Captain position. Shortly thereafter, the Town implemented its first-ever Captain Promotion Board.

41.     Plaintiff voiced his complaints about the implementation of the Captain Promotion Board to Chief Walls and former Town Manager Maria Stroupe, telling them that he believed the implementation of the additional requirement of the Captain Promotion Board vote was discriminatory.

42.     The Captain Promotion Board, a neutral decision-maker, voted unanimously to promote Plaintiff to Captain.

43.     Despite the Captain Promotion Board's unanimous vote, Defendant Chief Walls chose to promote Sergeant Fleming over Plaintiff.

44.     At the time Defendant Chief Walls promoted Sergeant Fleming, Plaintiff had no disciplinary actions.

45.     At the time the Town and Chief Walls promoted Sergeant Fleming, Chief Walls knew Sergeant Fleming had complaints issued against him and that Fleming

had received disciplinary action.

46.     Upon information and belief, Defendant Chief Walls requested feedback on Plaintiff and Sgt. Fleming, a white officer, from other DPD employees, and that the officers were graded on several categories.

47.     Chief Walls made his decision to promote Sgt. Fleming over Plaintiff based on recommendation letters that highly recommended Sgt. Fleming for the captain position.

48.     Upon information and belief, Sgt. Fleming's letters of recommendations for captain came from a judicial official, community member, lifelong friend, former coworker/friend, his wife, and six officers that Fleming supervised when he was their Patrol Sergeant.

49.     Defendant Chief Walls did not allow Plaintiff to have his former subordinates, wife, or lifelong friends write letters of recommendation on his behalf. Instead, the Town gave Sgt. Fleming, a white male, opportunity for recommendation letters, which it did not afford Plaintiff.

50.     From 2016 to the present, Plaintiff has been the only officer/detective in the entire Dallas Police Department to testify before a Grand Jury for every officer's case.

51.     At the time the Town promoted Sgt. Fleming to Captain, Plaintiff had more experience correcting narrative briefs than Sgt. Fleming.

52.     At the time the Town promoted Sgt. Fleming to Captain, Plaintiff read

and corrected all officers' narrative reports— including Chief Walls' and Sgt. Fleming's narrative reports—before he testified before a Grand Jury.

53.    Plaintiff was qualified for the position of Captain.

54.    At the time of the promotion, Sgt. Fleming had not been a sergeant a year, while Plaintiff had been a sergeant for at least three years.

55.    At the time of the promotion, Plaintiff had been in a supervisory role twice as long as Sgt. Fleming, and had supervised Sgt. Fleming when Sgt. Fleming was a patrol officer.

56.    At the time of his promotion, Sgt. Fleming had not completed any supervisor training, while Plaintiff had successfully completed several trainings.

57.    At the time of the promotion, Plaintiff held two degrees, while Sgt. Fleming held none.

58.    At the time of the promotion, Plaintiff' entire twenty-year career in law enforcement was in a police department, whereas Sgt. Fleming's previous experience with the University of North Carolina at Charlotte Police Department from 2006-2016.

59.    At the time of the promotion, Plaintiff was Section & Platoon Segreant over Soldiers and Marines, whereas Sgt. Fleming did not serve.

60.    At the time of the promotion, Plaintiff held seniority and rank over Sgt. Fleming in Dallas Police Department.

61.    At the time of the promotion, Plaintiff had been promoted to Sergeant

October 16, 2017, whereas Sgt. Fleming was promoted to Sergeant March 29, 2020.

62.     At the time of the promotion, Plaintiff held rank of sergeant for three years and four months before the captain promotion process, whereas Fleming held the rank of sergeant for 11 months.

63.     Prior to Fleming's selection as Captain,  Plaintiff was his supervisor when Fleming was an officer.

64.     At the time of the promotion, Plaintiff Simultaneously supervised Investigations and both Patrol rotations whereas Sgt. Fleming supervised one patrol rotation.

65.      At the time of the promotion, Plaintiff served as sergeant over Internal Affairs and Criminal investigations whereas Sgt. Fleming does not have experience in either unit.

66.     Upon information and belief, Plaintiff is the only officer within the Town's police department to have written search warrants for social media and the only officer to have written and executed search warrants on residents whereas Sgt. Fleming has never written a search warrant.

67.     At the time the Town selected Sgt. Fleming for the position of captain, Plaintiff was one of only two officers that were a Hostage Negotiator and the only officer who completed the FBI Hostage Negotiator Course. Sgt. Fleming was neither a hostage negotiator nor had completed the FBI's course.

68.     At the time the Town selected Sgt. Fleming for the position of captain,

Plaintiff was certified in Internal Affairs whereas Sgt. Fleming was not.

69.     Prior to his selection as Captain, Sgt. Marcus Fleming had not received any formal supervisor training, but Defendant Walls promoted Fleming over Plaintiff.

70.     Two years prior to the Captain position becoming available, Plaintiff attended a course titled 'Effective Supervisory Management' taught at UNC.

71.     At the time the Town selected Sgt. Fleming for the position of captain, he held no degrees, whereas Plaintiff held an associate degree and a bachelor's Degree.

72.     Plaintiff placed first on the captain assessment board because all five accessors chose him.

73.     Sgt. Marcus Fleming placed last on the  captain assessment board.

74.     Defendants relied upon recommendations from Sgt. Fleming's close friends and colleagues to support its decision to promote Fleming, but disregarded the vote of the Captain Promotion Board, who did not personally know Sgt. Fleming or Plaintiff.

75.     Defendants chose to ask Sgt. Fleming's closest friends and colleagues for a recommendation instead of respecting the votes of the Captain Promotion Board.

76.     Prior to the Town's promotion of Sgt. Fleming to Captain, any and all citizens complaints against Plaintiff were determined to be unfounded and he had no disciplinary actions.

77.     Defendant Chief Walls previously promoted white males, who were the

subject of an investigation by Internal Affairs, including Officer Wingate.

78.    Upon information and belief, when Defendant Chief Walls was a Captain, he was the Internal Affairs Officer for the Dallas Police Department. However, in early 2019, former Police Chief Scott called Plaintiff into his office and informed him that he was now the Internal Affairs Officer (effective immediately) because of an integrity issue.

*Town of Dallas' Failure to Pay for On Call/Stand-By Pay and Bonus Incentives*

79.    Since 2017 and continuing, Defendants have failed to consistently compensate Plaintiff for on-call work completed like it has white male employees of the Town who are comparable for the purposes of the Town's wage and salary system.

80.    Plaintiff believes that race has been a motivating factor in the Town's failure to pay Plaintiff.

81.    Plaintiff raised concerns about the Town's payment of on-call work to white male employees while Plaintiff was away from work on military service in 2019.

82.    Defendants have not  provided Plaintiff with a reason for its failure to compensate Plaintiff for on-call work completed.

83.    The Town refused to pay Plaintiff "On Call/Stand-By Pay" as stated in the Town of Dallas Policy Manual.

84.    However, upon information and belief, the Town regularly pays white employees for On Call/Stand-By.

85.     When Plaintiff complained about non-payment, the Town Manager asserted that Plaintiff did not "rate" for On Call/Stand-By Pay.

86.     When Plaintiff showed the Town its employee handbook policy, the Town then asserted that the Dallas Police Department did not budget for it. The Town eventually paid Plaintiff a one-time check for six months back pay, but this was not until Robert Walen Walls, a white officer, who was a captain at the time, demanded to be paid for On Call/Stand-By Pay

87.     Upon information and belief, white employees, who work for the Town water department, Town street department and Town public works department currently receive Stand-by pay.

88.     The Town and Chief of Police have denied Plaintiff the captain's rank because of his race.

89.     The Town and Chief of Police have denied Plaintiff the lieutenant and captain salary because of his race.

90.     The Town and Chief of Police have denied Plaintiff the captain and lieutenant rank because of his race.

91.     On January 6, 2022, Sergeant Detective Burgess inquired about receiving an incentive bonus that was made available to all officers who had obtained their Associate's, Bachelor's, or Master's Degrees.

92.     The Town's bonus incentive was $1000 added to base pay for each type of degree earned while employed, for a cumulative potential of $3000. There were no

temporal qualifiers indicated in the incentive guidelines.

93.     Plaintiff earned his Associate's Degree in December 2017. Former Town Manager Maria Stroupe informed HR Director Sarah Hamrick that any certifications or degrees earned prior to 2019 did not qualify for the incentive.

94.     Upon information and belief, Officer JT Green, a white male officer who had not engaged in protected activity similar to Plaintiff and who earned his Associate's Degree in 2016, did receive the $1000 incentive.

95.     DPD "offers" monetary incentives to white officers who obtained additional degrees but chose to deny additional supervisor training to Sergeant Burgess after he complained of race discrimination.

96.     Defendant Chief Walls purposely and discriminatorily manipulated employment policies to ensure that only white male candidates were considered for promotion to the positions of Lieutenant and Captain to the exclusion of qualified black and/or minority candidates, including Plaintiff.

97.     Plaintiff has continues to submit his application for placement in the vacant lieutenant position and continues to be denied.

98.     Defendant Chief Walls purposely and discriminatorily manipulated its employment policies to ensure that only white male police officers receive stand-by pay to the exclusion of black employees, including Plaintiff.

99.     Defendant Chief Walls purposely and discriminatorily manipulated employment policies to ensure that only white male police officers receive education incentives to the exclusion of black employees, including Plaintiff.

100.    In a March 2020 supervisor meeting, Plaintiff learned that additional training had been offered to everyone in the department "with rank" *except him*.[2]

101.    Defendant Walls has intentionally excluded Plaintiff from First Line Supervision week-long training that Captain Fleming (white male), Sgt. Wingate (white male), and Sgt. Beer (white male) all attended simultaneously.

102.    Upon information and belief, none of the training invitees had engaged in protected activity, such as complaining of race discrimination. What's more, Plaintiff was made responsible for covering the other supervisor's shifts while they were away in training from March 21, 2022, through March 25, 2022.

103.    The Town did not pay Plaintiff for covering the other white male supervisors' shifts.

104.    Upon information and belief, the other officers who were given the opportunity to attend training had not engaged in protected activity.

105.    Every month, Plaintiff works On Call, and every month, the Town of Dallas refuses to pay Plaintiff's on call pay. This is an ongoing, continuous adverse action done in retaliation for Plaintiff lodging a race discrimination complaint.

---

[2] Members of the DPD with rank include Chief Robbie Walls, Captain Marcus Fleming, and Sergeant Detective Chris Burgess.

106.    In 2023, Chief Walls held a promotional board for sergeants after the only other black officer in DPD, Officer Ralph Enoch,  inquired about being promoted to sergeant.

107.    Upon information and belief, Chief Walls denied Officer Enoch from receiving a promotion to sergeant because Enoch filed a complaint against a white officer named Sergeant Beer.

108.    The Town of Dallas employee manual states when employees receive Stand-by pay. Sgt. Burgess is the only non-salaried employee who is on-call but does not receive Stand-by pay.  However, only white employees of the Town are paid for being on call.

109.    In 2019, when Captain Walls complained about back pay, both Captain Walls and Plaintiff were paid Stand-by pay.

110.    When Captain Walls was appointed Chief of Police, he became a salaried employee.

111.    Plaintiff remained a non-salaried employee and should have continued to receive Stand-by pay.

112.    Plaintiff's Stand-by pay stopped even though he was still required to respond to calls at any time and within a certain time frame.

113.    It is the Town's practice that only white employees qualify for Stand-by pay.

114.     After filing numerous complaints, Defendant Chief Walls and Captain Fleming also excluded Plaintiff from emails and internal Affairs Investigations despite the Plaintiff being the only Internal Affairs Officer.

115.     Defendant Chief Walls also excluded Plaintiff from meetings where the white male sergeants were allowed to attend.

116.     After his complaints of race discrimination, internally and to the EEOC, Captain Fleming provided Plaintiff with the lowest job performance evaluation score among all sergeants.

117.     Prior to this performance evaluation, Plaintiff had never received any coaching or disciplinary action regarding his writing skills.

118.     After Plaintiff filed complaints internally and with the EEOC, Defendant Walls excluded Plaintiff from attending Tracs Training but allowed Officer Smith (white male), Sgt. Green (white male), and Nikki Stines (Chief Walls's Assistant Civilian) to attend. The following year, Nikki Stines and Sgt. Beer (white male) were provided the opportunity to attend but not Plaintiff.

119.     After Plaintiff filed complaints internally and with the EEOC, Captain Fleming scheduled Sgt. Beer and Sgt, Green only to attend BolaWrap training on June 27th, 2024, and again excluded Plaintiff. Plaintiff was later able to attend the training, and as a result, is currently the only BolaWrap instructor for the agency.

120.     After Plaintiff filed complaints internally and with the EEOC, Defendant Chief Walls has refused to issue a new patrol car to Plaintiff. Shortly after being

appointed to chief of police, he took Plaintiff out of the issued unmarked Durango and issued it to Sgt. Beer (white male) despite Plaintiff being the most senior officer in the department.

121.     After Defendant Chief Walls was appointed as chief of police, the department received at least eight new patrol vehicles.

122.     Before July 2023, Chief Walls issued all new vehicles to officers who were employed after Plaintiff but not to Plaintiff in retaliation for filing a EEOC complaint.

123.     Plaintiff had to incur costs, fees, and expenses for day to day upkeep of a vehicle due to not having a DPD-issued patrol vehicle.

## IV. CLAIMS FOR RELIEF
### First Claim For Relief - Race Discrimination
(Against Town of Dallas and Chief Walls in his official capacity)

124.     Plaintiff realleges and incorporates all the preceding paragraphs by reference.

125.     Defendant discriminated against plaintiff by treating him differently from other Caucasian employees and not promoting Plaintiff. Defendant's actions complained of herein subject the plaintiff to discrimination on the basis of his race, in violation of § 1981.

126.     This law entitles a person of color to equal opportunity and treatment in employment.

127.     Plaintiff belongs to a protected group.

128.     Section 1981 states that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

129.     For purposes of Section 1981, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

130.     Plaintiff's employment relationship with Defendant Town may be deemed a contractual one for purposes of Section 1981.

131.     Similarly, 42 U.S.C. § 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suite in equity, or other proper proceeding for redress ...."

132.     Defendants in coordination with, and by and through the actions of Defendant Walls have deprived Plaintiff of his right to be free of racial discrimination in the terms and conditions of their employment.

133.     Defendants purposely and discriminatorily manipulated its employment policies to ensure that only white male candidates are considered for promotion to the positions of Lieutenant and Captain to the exclusion of qualified black and/or minority candidates, including Plaintiff.

134.     Defendants purposely and discriminatorily manipulated its employment policies to ensure that only white male police officers receive stand-by pay to the exclusion of black employees, including Plaintiff.

135.     Defendants purposely and discriminatorily manipulated its employment policies to ensure that only white male police officers receive education incentives to the exclusion of black employees, including Plaintiff.

136.     Plaintiff's race and protected activities prompted Defendants' decision not to promote him to one of the two available positions of Lieutenant and Captain. His race and protected opposition were also factors in their decision not to issue stand-by pay.

137.     As a direct result of defendant's actions, plaintiff has suffered damages, including economic damages and emotional distress, in an amount in excess of $10,000.00.

<u>Second Claim For Relief - Race Harassment</u>
(Against Town of Dallas and Chief Walls in his official capacity)

138.   Plaintiff realleges and incorporates all the preceding paragraphs by reference.

139.   Defendant Chief Walls created a racially hostile and retaliatory work environment by, among other things, holding Plaintiff to different workplace standards than those imposed by his white counterparts.

140.   Defendants have excluded Plaintiff from communications and meetings that his white counterparts attended, singled him out for unwarranted counseling, issued him low performance evaluations, failed to promote him to the position of Captain or Lieutenant, failed to pay stand-by pay, and failed to pay him for education bonus.

141.   Such acts and/or omissions on the part of Defendants County and Board of Commissioners were deliberately intended to dissuade and would dissuade a reasonable employee from filing further legal action to enforce his rights under the federal anti-discrimination statutes.

142.   As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffers and continues to suffer present and future pecuniary losses, including, but not limited to, loss of wages and other benefits.

143.   In addition, Plaintiff has sustained, as a direct and proximate result of Defendants' actions, damages in the form of emotional distress, including, but not limited to, anxiety, depression, humiliation, embarrassment, and loss of professional standing. Accordingly, Plaintiff is entitled to have and recover from Defendants back pay, front pay, and compensatory damages in amounts to be proved at trial.

### Third Claim For Relief - Race Retaliation
(Chief Walls in his official and individual capacity)

144.     Plaintiff realleges and incorporates all the preceding paragraphs by reference.

145.     Defendant Chief Walls directly participated, in his individual capacity, in the selection processes for a new Captain and Lieutenant and altered Defendant Town's promotional policies and practices in order to effectuate the racially discriminatory result which they intended, i.e. – the selection of an internal white male candidate for promotion to the position of Captain of the Town of Dallas Police Department on February 24, 2021, and the decision to not select an officer to fill the vacant Lieutenant position through present date and Plaintiff's race, as well as his protected activities, were the factors in Defendant Chief Walls' decisions to deny and/or to refuse Plaintiff promotional opportunities with regard to the Captain position and with regard to Lieutenant position.

146.     Defendant Chief Walls knew that his acts and omissions were in direct contravention of federal law prohibiting racial discrimination and retaliation with the regard to the terms and conditions of Plaintiff's employment.

147.     As a result of Defendant Chief Walls' discriminatory and retaliatory acts and omissions, Plaintiff was deprived of his right to be free of race discrimination and retaliation within the workplace as secured by the Equal Protection Clause of the Constitution of the United States and Section 1981, 1983.

148.     As a direct and proximate result of Defendant Chief Walls' acts and omissions, Plaintiff suffered and continues to suffer present and future pecuniary losses, including, but not limited to, loss of wages and other benefits.

149.     In addition, Plaintiff has sustained, as a direct and proximate result of Defendant Walls' actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing.

150.     Accordingly, Plaintiff is entitled to have and recover from Defendant Walls in his individual capacity, jointly and/or severally, back pay, front pay, and compensatory damages in amounts to be proved at trial.

151.     Defendant's acts and omissions were undertaken with malice and/or a reckless indifference to Plaintiff's federally protected rights.

## V. DAMAGES

152.     As a result of the discrimination complained of herein, the plaintiff has been deprived of his rights protected by §§ 1981, 1983.

153.     Plaintiff sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses for which she is entitled to recovery under his causes of action.

154.     Plaintiff is also entitled to equitable relief in the form of an injunction against future discrimination or retaliation.

155.     Plaintiff is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

156.     By reason of the defendant's conduct and as a proximate result thereof, the plaintiff has suffered a loss of a law enforcement career by virtue of the failure to promote and has suffered emotional distress.

157.     As a direct result of the defendant's actions, the plaintiff has suffered damages, including economic damages and emotional distress, in an amount in excess of $5,000,000.00.

## VI. JURY TRIAL DEMANDED

The Plaintiff, Sergeant James Christopher Burgess demands a jury trial regarding the matters alleged herein.

## VII.     PRAYER FOR RELIEF

Wherefore, the Plaintiff, Sergeant James Christopher Burgess, respectfully request the Court to:

A.  Declare the actions complained of herein to be illegal;

B.  Issue an injunction enjoining defendant, its agents, its employees, successors, attorneys and those acting  in concert or participation with the defendant and at its direction from engaging in the unlawful practices set forth herein and any other employment practice to be shown in violation of 42 U.S.C., *§ 1981,* 1983;

C.  Award plaintiff compensatory damages, including damages for mental anguish and stress, and harm to plaintiff's career opportunities;

D.  Award plaintiff back pay and all other economic damages to provide make whole relief;

E.  Award plaintiff his costs and expenses in this action, including reasonable attorney's fees, costs and other litigation expenses;

F.  Grant such other and further relief as may be just and necessary to afford complete relief to plaintiff.

This the 24th day of February 2025.

/s/ Micheal L. Littlejohn Jr.
Micheal L. Littlejohn, Jr.
N.C. Bar No. 49353
Littlejohn Law PLLC
PO Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com
Counsel for Plaintiff