UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:25-cv-00137

| | | |
|---|---|---|
| SERGEANT JAMES CHRISTOPHER BURGESS, | ) ) ) | |
| Plaintiff, | ) ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | ) ) ) | |
| TOWN OF DALLAS, NORTH CAROLINA, ROBERT WALLS, in his official capacity as Chief of Police of the Dallas Police Department and in his individual capacity, | ) ) ) ) | |
| Defendants. | | |

**NOW COME** Defendants Town of Dallas, North Carolina ("the Town") and Robert Walls, in his official and individual capacity ("Chief Walls") (collectively, "Defendants"), through counsel, and submit this Memorandum of Law in support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (DE 11) pursuant to Fed. R. Civ. P. 12(b)(6).

**BOTTOM LINE UP FRONT**

This case arises from Plaintiff's contention that he was passed up for promotion by the Town in February of 2021 and treated differently from white Officers. Plaintiff brings claims under 42 U.S.C. § 1983 and § 1981 for 1) Race Discrimination and 2) Race Retaliation against the Town and Chief Walls in his official and individual capacity; 3) for Race Harassment under 42 U.S.C. § 1983 and § 1981 against the Town and Chief Walls in his individual capacity; and 4) Retaliation in Violation of the First and Fourteenth Amendments under 42 U.S.C. § 1983 against the Town and Chief Walls in his individual capacity. Plaintiff's claims fail as he has not adequately plead a

constitutional violation against the Town or Chief Walls in his official capacity, nor a cognizable claim against Chief Walls in his individual capacity.

## FACTS

Plaintiff is an African American male employed in the Town's Police Department as Detective Sergeant. (DE 11, ¶ 28). In 2017, Plaintiff "inquired about the vacant Lieutenant position" in the Department, but was told the Town was not filling that position. *Id*. at ¶ 34. In 2020, when Walls was appointed Chief, Plaintiff again inquired "about the captain and lieutenant vacancies," and Chief Walls stated, "he was going to conduct a promotional board, which had never been done before," and the "Town held a Promotion Board for sergeants first," promoting Fleming and Beer to Sergeant in 2020. *Id*. at ¶¶ 35-37, 40-42, 79.

In or around November 2020, Plaintiff made known his interest in the vacant Captain position, and Plaintiff and Fleming later applied for Captain through a three phase "Captain Promotion Board." *Id*. at ¶ 47, 56. Plaintiff admits the Board was "a neutral decision-maker," but contends that on January 28th and 31st of 2021, he complained that the Board was "discriminatory" and "racially biased," even though both Fleming and Plaintiff were subject to the Captain Promotion Board. *Id*. at ¶¶ 44, 48-49, 57-58, 96. Notably, the Town used the same Board process prior to the Captain Promotion Board to promote Fleming and Beer to Sergeant. *Id*. at ¶ 37. Plaintiff further contradicts himself by claiming "after these promotions, Chief Walls did not conduct another promotional board but selected a white male to the rank of sergeant," while stating that "[i]n 2023, Chief Walls held a promotional board for sergeants." *Id*. at ¶¶ 115-116.

The Board "voted unanimously to promote Plaintiff to Captain," but "Walls chose to promote Sergeant Fleming," whom Plaintiff alleges is "lesser qualified," and Walls notified Plaintiff on February 24, 2021. *Id*. at ¶¶ 52, 58-60. Plaintiff claims Walls promoted Fleming over him based

4918-6985-4279, v. 1

on letters highly recommending Fleming, claiming Walls did not permit Plaintiff to have recommendation letters. *Id*. at ¶¶ 46-47, 49.

Plaintiff claims the Town and Chief Walls "denied Plaintiff the captain and lieutenant rank because of his race," and "Defendants purposefully and discriminatorily manipulated its employment policies to ensure that only white male candidates are considered for promotion to the positions of Lieutenant and Captain." *Id*. at ¶¶ 146, 152, 221. However, Plaintiff admits the Town has never filled the Lieutenant role, which has been vacant since 2017. *Id*. at ¶¶ 55, 120, 153. Plaintiff contradicts himself yet again by claiming another Black Officer, Michael Lynch, was promoted to Police Captain in 2017. *Id*. at ¶ 208.

Plaintiff also complains he is entitled to compensation for "on-call work," claiming that since 2017, Defendants "failed to consistently compensate Plaintiff for on-call work completed like it has white male employees of the Town who are comparable […]" *Id*. at ¶ 127.  Plaintiff "believes that race has been a motivating factor in the Town's failure to pay Plaintiff," but pleads no facts in support. *Id*. at ¶ 134. Plaintiff claims he "raised concerns about the Town's payment of on-call work to white male employees" while he "was away from work on military service in 2019," but does not explain why he was entitled to compensation while not working for the Department. *Id*. at ¶ 135.

He similarly alleges the "Town refused to pay Plaintiff 'On Call/Stand-By Pay' as stated in the Town of Dallas Policy Manual," as the Town Manager stated Plaintiff "did not 'rate' for On Call/Stand-By Pay," but admits that in July of 2019, "when then-Captain Robert Walls […] asked to be compensated for Stand-by Pay," the "Dallas Police Department finally 'changed the practice,'" and "both Captain Walls and Plaintiff were paid Stand-by pay." *Id*. at ¶¶ 130, 137, 140-142, 166. Plaintiff also admits he was paid a "one-time check for six months back pay" after Walls "demanded to be paid for On Call/Stand By Pay" in 2019. *Id*. at ¶ 142.

4918-6985-4279, v. 1

<u>**ARGUMENT**</u>

**I.     Plaintiff's Duplicative Official Capacity Claims Should Be Dismissed.**

When a governmental employee is sued in his official capacity, the claim is against the employee's governmental office, not the individual occupying the office. *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998); *Armstrong v. City of Greensboro*, 190 F.Supp.3d 450, 463 (2016); *Kentucky v. Graham*, 473 U.S. 159, 165-167 (1985). As Plaintiff named the Town as a Defendant, Plaintiff's duplicative official capacity claims against Chief Walls should be dismissed. While Plaintiff claims "Chief Walls is sued solely in his individual capacity" (DE 11, ¶ 7), this is inaccurate. Plaintiff alleges Walls "is sued in his official capacity for compensatory damages under Federal law," and contends he has "brought his suit against" "Walls, in his official capacity." *Id*. at ¶¶ 14, 21, 228. Three of Plaintiff's claims are specifically plead against Walls in his official capacity. *Id*. at ¶¶ 211-249. These official capacity should be dismissed.

**II.    Plaintiff Cannot Maintain Any Claim Under 42 U.S.C. § 1983 Against The Town And Chief Walls In His Official Capacity**.

A §1981 claim against a municipality may only be brought pursuant to 42 U.S.C. § 1983, which provides the "exclusive federal remedy for violation of the rights guaranteed in § 1981." *Dennis v. Cty. of Fairfax*, 55 F. 3d 151, 156 (4th Cir. 1995). Thus, for Plaintiff to allege a plausible claim of employment discrimination against the Town and Chief Walls in his official capacity, he must allege the same elements as a Title VII employment discrimination claim, with the additional § 1983 requirement that Plaintiff allege a "policy or custom" of discrimination. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015).

Under § 1983, Plaintiff must establish: (1) he has been deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law. *See* 42 U.S.C. § 1983.

4918-6985-4279, v. 1

Here, Plaintiff alleges Defendants are liable under § 1983 because they violated his right to free speech, and engaged in racial discrimination, harassment, and retaliation. All Plaintiff's § 1983 claims fail as a matter of law.

### A. Plaintiff's § 1983 claims against the Town fail because municipal liability cannot be based solely on *respondeat superior*.

Municipal liability may be imposed under § 1983 only where the constitutional deprivation is the result of the municipality's official policy or custom; a municipality may not be held vicariously liable for the constitutional torts of its officers solely based on *respondeat superior*. *Monell*, 436 U.S. at 692-694. Specifically, to properly allege a *Monell* claim, Plaintiff "must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Jordan ex rel. Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994).

A municipal policy may arise: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority;" or "(3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation omitted). A municipal custom arises if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018.

On the face of the Amended Complaint, Plaintiff has not identified any factually supported grounds (other than a *respondeat superior* theory) for imposing liability against the Town or Chief Walls in his official capacity under *Monell*.

### A. Plaintiff does not allege any official Town policy or custom caused a deprivation of constitutional rights.

4918-6985-4279, v. 1

Plaintiff cannot demonstrate the alleged constitutional deprivation was caused by an official policy or custom of the municipality itself, where he does not point to even a single specific Town policy which caused a deprivation of his rights. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544-45, 127 S. Ct. 1965, 167 L. Ed. 2d 929 (2007); *Revene v. Charles County Com'rs*, 882 F.2d 870, 874 (4th Cir. 1989). In this context, "policy" denotes a course of action that is the standard or routine, distinguishable from "episodic exercises of discretion in the operational details of government." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). Only where the municipality has made "a deliberate choice" to establish the questioned policy as the standard course of action to be followed in similar circumstances will municipal liability under § 1983 lie. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Moreover, the challenged municipal "policy or custom" must be an existing policy or custom of depriving persons of <u>the particular right in question</u>. *Id.* "Thus, a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove that . . . [the municipal policy itself] was the moving force behind [his] deprivation." *Id.*

Not only does Plaintiff fail to plead the existence of a specific discriminatory policy, he actually alleges the Town's policy was <u>not discriminatory</u>, claiming the Captain Promotion Board was "a <u>neutral decision-maker</u>," but Walls "<u>altered Defendant Town's promotional policies and practices</u>" and "<u>manipulated its employment policies</u>" "to effectuate the racially discriminatory result." (DE 11, ¶¶ 58, 152, 154-155, 221, 223-224) (emphasis added). Thus, as pertains to the Captain promotion process, Plaintiff pleads himself out of alleging a discriminatory Town policy deprived him of constitutional rights. Similarly, Plaintiff cites to no policy preventing him from obtaining the Lieutenant role, which has remained vacant since 2017. *Id.* at ¶¶ 55, 120, 153.

As to Defendants' other purported § 1983 violations, such as "Stand-By Pay" and "education incentives," Plaintiff simply parrots his claims that Defendants "purposely and discriminatorily manipulated its employment policies." *Id.* at ¶¶ 134-135. Not once does he allege

6

4918-6985-4279, v. 1

the policy itself was discriminatory. Plaintiff's remaining allegations, such as his "exclusion" from communications, meetings, and Internal Affairs matters likewise make no mention of an underlying policy. *Id*. at ¶¶ 171, 230. Therefore, Plaintiff has not plead Defendants deprived him of a constitutional right pursuant to an express policy under *Monell*.

Plaintiff's Complaint is equally devoid of allegations establishing an illegal "custom" existed. *Twombly*, 550 U.S. at 554-55, 1275 S.Ct. at 1965. Rather, Plaintiff strings together legal conclusions claiming Walls acted "under the color of laws, statutes, regulations, customs, practices and usage of the Town […]" (DE 11, ¶ 14). Plaintiff's other conclusory assertion that the exclusion of "Black sergeants from command positions" constitutes "a well-settled municipal custom" is not only contradicted by his own allegations about promotions within the Department, but is plainly based on an improper *respondeat superior* theory arising from the alleged actions of the Town's employee, Chief Walls. *Id*. at ¶¶ 120, 133, 208.

Plaintiff's perfunctory allegations do not plausibly allege a history of widespread abuse of constitutional rights as required to establish a municipal custom of discrimination under § 1983. *Monell*, 436 U.S. at 691 (holding a custom may not arise out of a single incident); *Fulmore*, 834 F. Supp. 2d at 410 (plaintiff's factual allegations were "speculative" and "inconsistent" with his "conclusory assertion that the City permitted a known custom or usage of racial discrimination."). Plaintiff's § 1983 claim should be dismissed.

### B. Walls lacks final policymaking authority.

Plaintiff equally fails to establish *Monell* liability through his inaccurate allegations that Chief Walls was a "final policymaker," for the Town. The "policymaking authority which can invoke § 1983 liability is 'authority to set and implement general goals and programs of municipal government.'" *Lytle*, 326 F.3d at 472, citing *Spell v. McDaniel,* 824 F.2d 1380, 1386 (4th Cir.

7

4918-6985-4279, v. 1

1987). Chief Walls unequivocally lacked that authority here, pursuant to both North Carolina law and the Town's own Ordinance.

Under N.C. Gen. Stat. § 160A-164, final policy making authority for the Town rests exclusively with the Town Council, (the "Board of Alderman") not the Police Chief. *See, e.g.*, N.C. Gen. Stat. § 160A-164 (authorizing city council to adopt personnel rules and regulations); N.C. Gen. Stat. § 160A-148 (manager is chief administrator, but must act "in accordance with such general personnel rules, regulations, policies, or ordinances as the council may adopt."); N.C. Gen. Stat. § 160A-164 (authorizing city council to adopt personnel rules and regulations).

The Town's Charter expressly states that it operates under the Council-Manager form of government in accordance with N.C.G.S. 160A, Article 7, Part 2. (**Exhibit 1** – Ordinance, Art. IV, § 4.1).[1] The Mayor and Board of Aldermen constitute the Town's governing body, and "may provide for the exercise of all municipal powers, and shall be charged with the general government of the Town." *Id.*, Art. I, § 2.1. The Town's Ordinance may only be "duly enacted by the Board, signed by the Mayor and attested by the Clerk." *Id.* at § 31.22.

Critically, the Town Board exercises "general supervision over the Police Department," and the "Police Department shall carry out all orders of the Board [...]" *Id.* at §§ 34.02, 34.04 (emphasis added). The Chief controls the Department only "under the supervision of the Board," and though the "Chief may suspend, for cause, any member of the Police Department," he may only do so until "the Board shall make final disposition of the matter." *Id.* at §§ 34.05-34.06 (emphasis added).

An official, like Chief Walls, whose acts are subject to review or supervision by a municipal policymaker lacks final policymaking authority. *Riddick v. Sch. Bd.,* 238 F.3d 518, 523–24 (4th

---

[1] Defendants request that the Court take judicial notice of the Town's Ordinance ( Exhibit 1), as the Court "may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009).

4918-6985-4279, v. 1

Cir. 2000). In the analogous case of *Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, the Fourth Circuit held that under the City Ordinance "*only* the City Manager and the City Council possess[ed] the authority to fashion policy with regard to employer-employee relations in all city departments." 64 F.3d 962, 965 (4th Cir. 1995) (emphasis in original).

Although the Fire Chief had authority to appoint captains and establish procedures for appointments, he lacked policymaking authority because his powers were "subject to the parameters established by the City." *Id.* at 64 F.3d 965–66. The Court cautioned against confusing "the authority to make final *policy* with the authority to make final implementing *decisions.*" *Id.* at 64 F.3d 966 (emphases in original); *see also, Robinson v. Balog,* 160 F.3d 183, 190 (4th Cir. 1998) (power of Director of Public Works Department "to choose whom to hire, promote, discharge, and transfer within the department" did not establish "the broader authority to craft municipal policy."); *Fulmore v. City of Greensboro*, 834 F. Supp. 2d 396, 407 (M.D.N.C. 2011) (Chief lacked "final authority to establish municipal policy" where Department's operations were subject to City's review for compliance with municipal policy and plaintiff's "bare-bones allegations" to the contrary were "insufficient under *Twombly's* plausibility standard.").

In a transparent effort to overcome the fact that the Town unequivocally <u>has not</u> delegated final policymaking authority to Walls, Plaintiff claims "[u]nder Dallas PD practice, the Chief makes the ultimate promotion decision subject only to budget approval, and the Board of Aldermen historically rubber-stamps those decisions." (DE 11, ¶ 110). This is exactly the type of conclusory allegation the Court cannot accept as true, where it is disproved by undisputed policy to the contrary and properly subject to judicial notice. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Well-established jurisprudence bars Plaintiff's conclusory claims, and he fails to state a *Monell* claim on this ground.

## III. Plaintiff's Individual Capacity Claims Against Walls Fail.

4918-6985-4279, v. 1

**A. Plaintiff fails to plead facts establishing the *prima facie* elements of his race discrimination and retaliation claims against Chief Walls.**

Nor can Plaintiff prevail on his individual capacity claims against Chief Walls based on 42 U.S.C. § 1981, pursuant to § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36, 109 S.Ct. 2702, 2723 (1989) (because § 1983 is the "exclusive federal damages remedy" in actions against "state actors" for vindication of rights guaranteed by § 1981, liability standards were necessarily the same); *Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir. 1995) (defendant is a "state actor" regardless of whether he was sued in his individual or official capacity).

To prevail on a § 1981 claim, Plaintiff must prove (1) "the defendant intended to discriminate on the basis of race," and (2) "the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). To establish Chief Walls is individually liable under § 1983, Plaintiff must affirmatively show Walls "acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Significantly, the required elements of a *prima facie* case of employment discrimination are the same under Title VII and § 1981. *Bryant v. Bell Atl. Maryland, Inc.,* 288 F.3d. 124, 133 (4th Cir. 2002).

Accordingly, to prevail on his racial discrimination claims, Plaintiff must show "(1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse action, he was performing his job at a level that met employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." *Jones*, 629 F. App'x at 468 (internal citations omitted). Similarly, to establish a *prima facie* case of retaliation under Title VII, Plaintiff must allege (1) "he engaged in a protected activity," (2) his "employer took an adverse employment action against [him]," and "(3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015).

4918-6985-4279, v. 1

Plaintiff's Amended Complaint fails to state a *prima facie* case of race discrimination or retaliation under Title VII, and thus fails to plead a § 1981 claim. Most of Plaintiff's miscellaneous complaints are not considered adverse employment actions. Plaintiff's other allegations concerning purported compensation and "education incentives" are time barred. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (four year statute of limitations for § 1981 claims). The only allegation this Court may consider concerns the Captain Promotion Board, and Plaintiff fails to allege any facts establishing he would have been promoted to Captain but-for Chief Walls' racial animus. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333, 140 S. Ct. 1009, 1014, 206 L. Ed. 2d 356 (2020) (rejecting argument that "a plaintiff should be able to overcome at least a motion to dismiss if it can allege facts plausibly showing that race was a 'motivating factor' in the defendant's decision"). Rather, Plaintiff merely claims the non-promotion was racially discriminatory. Plaintiff's speculation is insufficient under the law.

Plaintiff's racial retaliation claim fares no better, where he claims his January 2021 grievance and subsequent EEOC Charges were causally connected to a myriad of complaints occurring either before or long after he engaged in the purported "protected activity," but cannot remotely establish temporal proximity exists. Moreover, while Plaintiff alleges Chief Walls retaliated against him, per his own allegations, Walls was not involved in the payment of Plaintiff's "on/call, stand-by pay" or Fleming's performance evaluation, and Plaintiff likewise claims the Town denied him training in 2022 and 2024 and reassigned his vehicle in 2023. (DE 11, ¶¶ 130, 173, 193-195). Finally, Plaintiff cannot show Chief Walls retaliated against him by not promoting him to Lieutenant, where nobody has ever been promoted to Lieutenant, and the position remains vacant. *Id*. at ¶¶ 55, 120, 153. Accordingly, Plaintiff's individual capacity claims against Chief Walls for racial

4918-6985-4279, v. 1

discrimination, harassment, and retaliation under 42 U.S.C. §§ 1981 and 1983 fail as a matter of law.

### B. Plaintiff's First Amendment claim fails. [2]

Plaintiff's First Amendment claim against Walls in his individual capacity should also be dismissed. To plead a First Amendment claim, "Plaintiff must show 1) 'that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern;' 2) 'that the alleged retaliatory action deprived him of some valuable benefit;' and 3) 'a causal relationship between the expression of public concern and the retaliatory action.'" *Baker v. Mecklenburg County*, 853 F.Supp. 889, 892 (W.D.N.C. 1994), *aff'd* 48 F.3d 1215 (4th Cir. 1995), citing *Huang v. Board of Governors of U.N.C.,* 902 F.2d 1134, 1140 (4th Cir. 1990). "[U]nder § 1983, [a plaintiff] must show first that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern." *Huang,* 902 F.2d at 1140, citing *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1689, 75 L.Ed.2d 708 (1983).

Speech only "involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City,* 388 F.3d 440, 446 (4th Cir. 2004). "[I]t is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern." *Baker*, 853 F. Supp. at 893. "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern [...]" *Munn-Goins v. Board of Trustees of Bladen Community College*, 658 F. Supp. 2d 713, 726 (internal citation omitted). This is so even though a governmental office is involved, as "the First Amendment does not require a public office to be

---

[2] While Plaintiff claims he was retaliated against both "in violation of the First and Fourteenth to the Amendments," he does not even plead the legal elements of a Fourteenth Amendment claim, much less any supporting facts. (DE 11 at ¶ 255).

run as a roundtable for employee complaints over internal office affairs." *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691.

In this case, Plaintiff's allegations cannot satisfy the "public concern" requirement. Plaintiff points to his January 2021 "internal complaints" of "racially discriminatory promotion practices to the Town Manager and Human Resources" and his subsequent "formal EEOC filings," where were not filed until July 2021 and January 2022, long after the Captain promotion process concluded. (DE 11, ¶¶ 238, 252-253, 255). While Plaintiff claims he made these complaints "as a citizen on a matter of public concern," *Id*. at ¶ 264, the Fourth Circuit has already disposed of Plaintiff's argument.

In *Massaro v. Fairfax Cnty.*, the Fourth Circuit found "a promotion complaint made via an internal grievance process does not reflect a matter of public concern," where the thrust of the plaintiff's complaint was that "he, personally, was not promoted in lieu of a woman he viewed as unqualified," and "sought to improve his own station by following internal procedures." 95 F.4th at 906; *see also DeWitt v. Mecklenburg Cnty.*,73 F. Supp. 2d 589, 607 (W.D.N.C. 1999) (plaintiff's EEOC Charge and internal complaints "addressed a private grievance rather than a public concern."); *Foxx v. Town of Fletcher*, No. 1:07CV336, 2008 WL 927543, at *8 (W.D.N.C. Apr. 3, 2008) (no First Amendment violation where plaintiff officer alleged retaliation based on demotion, suspension, and negative impact to his work schedule after making complaints and filing a grievance with the Town concerning the Police Chief and other officers, as these complaints constituted "personal grievances, complaints about conditions of employment," not "speech about matters of public concern."). Plaintiff has not shown he engaged in protected speech about matters of public concern, a prerequisite to his First Amendment claim.

Moreover, Plaintiff pleads no factual support establishing that any "retaliatory adverse actions" were causally connected to protected speech. (DE 11, ¶ 259). Simply put, there is no temporal

4918-6985-4279, v. 1

proximity between Plaintiff's purported protected speech and any claimed retaliation, where the alleged adverse actions happened <u>years after</u> the subject complaints were made. *Id*. at ¶¶ 50, 193-194; *see Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993) ("This temporal proximity … is simply too slender a reed on which to rest a Section 1983 retaliatory discharge claim."). Likewise, notwithstanding Plaintiff's conclusory legal allegation as to causation, he cites no facts supporting his contention that the January 2021 complaints were the "but for" cause of his non-promotion, but bases this conclusion purely on speculation. Additionally, the Captain promotion decision was finalized <u>five months before</u> Plaintiff filed his EEOC Charge. *Id*. at ¶ 50.

## IV.     The Statute of Limitations Bars Plaintiff's Claims.

Lastly, Plaintiff's claims concerning any events that purportedly occurred <u>before February 24, 2021</u> are untimely and cannot be considered under the four year statute of limitations for a § 1981 claim. *Jones,* 541 U.S. at 124 S.Ct. at 1836. Accordingly, all allegations before this date are untimely, and this Court is precluded from considering the same in ruling on Defendants' Motion to Dismiss.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, Defendants respectfully request that the Court GRANT their Motion to Dismiss, and DISMISS Plaintiff's claims WITH PREJUDICE.

Respectfully submitted, this the 29th day of May, 2025.

**CRANFILL SUMNER LLP**

BY:     /s/ *Kayla N. McDaniel*
Kayla N. McDaniel, NC Bar # 57995
John P. Wright, NC Bar # 55109
*Attorneys for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
kmcdaniel@cshlaw.com
jwright@cshlaw.com

14

4918-6985-4279, v. 1

15

4918-6985-4279, v. 1

## <u>CERTIFICATE REGARDING THE USE OF ARTIFICIAL INTELLIGENCE AND WORD LIMITATION</u>

The undersigned certifies that, in accordance with the Court's Standing Order In Re: Use of Artificial Intelligence (Docket No. 2:24-mc-104), that no artificial intelligence was employed in doing research for the preparation of this document, with the exception of such artificial intelligence embedded in Westlaw Edge; and that every citation to an authority in this document has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority is provided.

The undersigned further certifies that this document does not exceed 4,500 words, exclusive of the case caption, and any certificates of counsel, as required pursuant to the Standing Order Governing Civil Case Management Before the Honorable Frank D. Whitney, Misc. No. 3:07-MC-47 (Doc. No. 2).

This the 29th day of May, 2025.

**CRANFILL SUMNER LLP**

BY:     /s/ *Kayla N. McDaniel*
        Kayla N. McDaniel, NC Bar # 57995
        John P. Wright, NC Bar # 55109
        *Attorneys for Defendants*
        P.O. Box 30787
        Charlotte, NC 28230
        Telephone (704) 332-8300
        Facsimile (704) 332-9994
        kmcdaniel@cshlaw.com
        jwright@cshlaw.com

16

4918-6985-4279, v. 1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 29, 2025, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Michael L. Littlejohn, Jr.
Littlejohn Law PLLC
P.O. Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Facsimile: (704) 625-9396
Email: mll@littlejohn-law.com
*Attorney for Plaintiff*

**CRANFILL SUMNER LLP**

BY:   /s/ *Kayla N. McDaniel*
        Kayla N. McDaniel, NC Bar # 57995
        John P. Wright, NC Bar # 55109
        *Attorneys for Defendants*
        P.O. Box 30787
        Charlotte, NC 28230
        Telephone (704) 332-8300
        Facsimile (704) 332-9994
        kmcdaniel@cshlaw.com
        jwright@cshlaw.com

4918-6985-4279, v. 1